**In re Anonymous No. 8 D.B. 87**

CURRAN, Jr., *Member,* March 21, 1988 — Pursuant to rule 208(d), Pa.R.D.E., the disciplinary board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

314

On February 10, 1987, pursuant to rule 207, Pa.R.D.E., a petition for discipline was filed against respondent, [ ].

Respondent was charged with violating the disciplinary rules of the Code of Professional Responsibility in three separate charges. Each of the three charges alleged the violation of D.R. 6-101(A)(3), dealing with neglect of a legal matter entrusted to a lawyer. The third charge also alleged the violation of D.R. 1-102(A)(4), dealing with conduct involving deceit and misrepresentation, and D.R. 1-102 (A)(6), dealing with conduct adversely reflecting on a lawyer's fitness to practice law.

The matter was referred to Hearing Committee [ ], before whom a hearing was conducted on May 29, 1987. The hearing committee report was filed on September 9, 1987. Based upon the evidence and testimony presented at the hearing, the hearing committee found that respondent had not violated D.R. 1-102(A)(4) or D.R. 1-102(A)(6). Respondent stipulated to violating D.R. 6-101(A)(6) as the result of his conduct relating to the first and third charges of misconduct. The hearing committee found that respondent also violated D.R. 6-101(A)(3), as alleged in charge II.

Subsequently, the hearing committee recommended that respondent be given a private reprimand and be placed on probation for a period of one year. The committee also recommended that respondent be encouraged to seek help for matters adversely affecting his ability to practice law.

The Office of Diusciplinary Counsel (petitioner) filed a petition to re-open the record for the taking of additional evidence, which, as averred by petitioner, would have material bearing upon the nature of

discipline to be imposed. Respondent's counsel filed a motion to strike, and an answer to the petition to re-open the record.

Petitioner subsequently filed an amended petition to re-open the record for consideration of two additional charges of professional misconduct, arguing that the additional charges had a potential impact on the type of discipline to be imposed. Respondent filed a motion to strike the amendeed petition to re-open, arguing that further charges should be decided on their own merits and not as part of the original proceeding. Petitionet filed a response to respondent's motion to strike, denying the arguments raised by respondent.

## BRIEF SUMMARY OF CASE

Respondent has stipulated to violating D.R. 6-101(A)(3), dealing with neglect of a matter entrusted to a lawyer in two of the charges lodged against him. Each charge deals essentially with failing to follow through and neglecting to pursue the objectives for which he was retained. In each instance, the matter was marked by respondent's failure to communicate with his clients or honor their requests for information or status updates. Each of the three charges will hereinafter be discussed seperately.

### Charge I

#### [A] Estate

Respondent stipulated to violating D.R. 6-101(A)(3) with regard to this matter. The pertinent facts are that respondent was retained by [B], daughter of the executrix, [C], and beneficiary of 50 percent of the estate. Respondent was retained by

[B] for the purposes of representing her in the purchase of her sister's share of the estate, and, at the direction of [C], to complete settlement of the [A] estate.

Respondent informed [B] that she could significantly lessen her inheritance tax liability if an amended return were filed. Respondent never filed said return, and never appeared at a court hearing pursuant to a citation issued to [C].

Despite various letters and telephone calls, respondent failed to tender to [C] for execution any inventory, first and final account, or amended inheritance tax return, or otherwise to act in any way to complete the administration of the [A] estate.

## Charge II

### [D] Appeal

Respondent was charged with violating D.R. 6-101(A)(3). The pertinent facts are that the respondent on September 30, 1985 was retained by the [D] to appeal an adverse jury verdict in the Court of Common Pleas of [   ] County that was awarded on September 24, 1985.

Respondent was paid a retainer of $200 and later another $100. He filed a motion for a new trial which was denied, but failed to *timely* file an appeal with the Superior Court.

The [D] made numerous attempts to contact respondent with regard to the filing of their appeal, but respondent failed to contact them or alternatively informed them that things were "proceeding normally" when, in fact, nothing had been done.

Finally, on April 11, 1986, the respondent filed a notice of appeal with the Superior Court. Respondent was advised by the prothonotry of the Superior

Court that said appeal lacked proof of service, but respondent never took steps to rectify that problem. A motion to quash the appeal filed by respondent was granted on December 16, 1986.

## *Charge III*

### *[E] Appeal*

Respondent stipulated to violating D.R. 6-101(A)(3) and was charged with violating D.R. 1-102(A)(4),dealing with conduct involving deceit and misrepresentation, and with violating D.R. 1-102(A)(6), dealing with conduct adversely reflecting on a lawyer's fitness to practice law.

The hearing committee found that the evidence did not support violations of either of the two latter charges.

The pertinent facts are that [E] retained respondent to file an appeal from a June 25, 1985 decision of the Unemployment Compensation Board of Review denying her unemployment compensation in her claim against her employer.

Respondent told [E] that she could recover at least $4,000 and told her that he would appeal the matter, but, in fact, never took any steps to appeal the matter despite repeated requests on status from February 1986 to August 1986.

## FINDINGS OF FACT

(The facts included herein are adopted from a stipulation between the parties to this proceeding.)

(1) Respondent, [ ], was born in 1949, admitted to practice law in the Commonwealth of Pennsylvania in 1980, and his office is located at [ ].

## Charge I

(2) On September 5, 1983, [A] died, testate, while a resident of [ ]County and possessing both real and personal property. Letters testamentary were granted to [C] on November 29, 1983, at which time [F] was acting as attorney for the estate.

(3) On December 6, 1984, an inheritance tax return was filed by [C] on which she calculated tax liability of the estate to be $1,257.15. (No payment was made at that time.)

(4) On December 26, 1984, Attorney [F] was permitted to withdraw from representation.

(5) A notice of inheritance tax appraisement dated February 19, 1985, was sent by the Department of Revenue to [C]. Tax liability for the estate corresponded to that which had been filed by [C], and also included an interest charge.

(6) In about July 1985, [B], daughter of [C] and a beneficiary of 50 percent of the estate, retained respondent to represent her in purchase of the share of her sister ([G]) in property devised to both of them by [A] and also, at the direction of her mother, to complete settlement of the estate.

(7) By letter dated July 17, 1985, respondent (on behalf of [B]) wrote to [C], wherein he:

(a) outlined the procedure to have the estate property transferred to [B]; and

(b) indicated that [B] had provided him with all the necessary papers in regard to the estate inheritance tax so that he could file an amended return.

(8) Shortly before the closing on the property sale:

(a) respondent told [B] that tax liability for the estate could be calculated at a significantly lower amount, and that respondent would file an amended tax return.

(b) [B] observed respondent filling out an amended tax return which calculated tax liability at $878.72.

(9) At the real estate closing in November 1985, respondent received from [H] Company three checks representing: (1) respondent fee of $1000; (2) money for [G's] share of the property; and (3) a check for $878.72 to pay the inheritance tax, as per the amended form respondent was to submit.

(10) On about February 10, 1986, the Pennsylvania Department of Revenue petitioned the Orphans' Court of [ ] County to issue a citation upon [C] to show cause why inheritance tax on the estate should not be paid. Respondent was timely advised of this petition.

(11) On March 26, 1986, the court issued such citation and ordered [C] to appear in court on May 12, 1986 and to show cause why the inheritance tax had not be paid.

(a) On about April 14, 1986, upon receipt of the order to appear, [C] contacted the inheritance tax office and explained that respondent was to have paid the taxes in November 1985.

(b) [C] was advised by that officer to forward to respondent the order to appear, along with the bill of $22 for the citation fee, which she did.

(12) On about April 21, 1986, a copy of the citation issued was sent by the orphans' court to respondent by certified mail and received in respondent's office on April 22, 1986.

(13) At about the same time that [C] received the citation to appear, she contacted [B] to see if she knew why the taxes had not been paid.

(a) [B] also believed that respondent had paid the taxes in November 1985.

(b) [B] subsequently called respondent, at which

time he told her the check was still in his file, as it had been incorrectly drawn to "Department of Deeds."

(c) [B] then came to respondent's office, picked up the check, and returned it to the mortgage company for correction.

(14) On May 1, 1986, after she had received a corrected check from the mortgage company, [B] paid the $878.72 to the register of wills.

(15) Also on May 1, 1986, while [B] was at the register's office, she learned that respondent had not filed the amended tax forms nor otherwise requested a reduction of the inheritance tax, as he had said he would do.

(16) Respondent did not appear at the hearing on May 12, 1986, nor did he pay the $22 citation fee.

(17) On about May 19, 1986, an inheritance tax statement of account was sent to [C] by the Department of Revenue.

(a) The account reflected that the $878.72 had been paid and that the remaining balance was $668.54 (which included interest charges).

(b) An amended tax return had not been filed, so that the principal tax liability remained the same as when the original tax form was filed in December 1984.

(18) On May 22, 1986, a court order was issued which ordered [C] to pay the balance of the inheritance tax due within 10 days of the entry of the order, a copy of which was sent to respondent by certified mail on May 22, 1986 and received in his office on May 23, 1986.

(19) On about June 5, 1986, [C] paid $668.54, which was the stated balance due on the inheritance tax account.

(20) On about June 23, 1986, the court ordered all proceedings initiated under the citation of Feb-

ruary 19, 1986 to be withdrawn, as inheritance taxes had been paid in full.

(21) By certified letter to respondent dated June 24, 1986, [C] requested information on the status of the estate and also asked for an explanation as to why respondent had not performed the services for which he had been retained.

(a) Therein, [C] also requested immediate reimbursement of $763.54 for inheritance tax paid; $67.90 accrued interest from Novenber 1985 through June 1986; $22 citation fee; and $5.50 miscellaneous expenses.

(b) Respondent did not respond to this letter.

(22) On June 30, 1986, [C] paid the $22 citation filing fee.

(23) By certified letter to respondent dated July 19, 1986, [C] requested a reply to her letter of June 24, 1986. Respondent failed to reply to this letter.

(24) To date, despite various reminders, respondent has failed to tender to [C] for execution any inventory, first and final acount, or amended inheritance tax return, or otherwise act to complete the administration of the estate of [A].

*Charge II*

(25) On June 8, 1984, [D] were sued by [I] in the Court of Common Pleas of [   ] County.

(26) On September 24, 1985, [I] obtained a jury verdict in his favor which awarded him damages in the amount of $3,632, plus interest from March 1, 1983.

(27) On or about September 30, 1985, respondent was retained by [D] to appeal the jury verdict.

(28) For his services, [D] paid respondent $200 by check dated September 30, 1985 (the date of retention), and $100 by check dated January 13, 1986.

(29) Between the date of retention until approximately late April 1986, [D] made many attempts to communicate with respondent regarding the appeal. In this regard:

(a) [D] visited respondent's office at least once a week, sometimes as often as three or four times a week, only to be told that respondent was not in or was busy, and that he would get back to him; however, respondent failed to do so.

(b) When [D] reached respondent in his office by telephone, respondent assured [D] that things were "proceeding normally," or words to that effect.

(30) Finally, on or about April 11, 1986, respondent caused to be filed with Superior Court a notice of appeal of [D's] case.

(31) By certified letter to respondent dated April 26, 1989, [D] requested return of his complete file within seven days, but respondent failed to respond to this letter.

(32) By letter to respondent dated May 29, 1986, sent by certified mail, [D] "officially" discharged respondent as his attorney; however, respondent failed to timely accept or claim this mailing.

(33) On or about October 29, 1986, the Superior Court prothonotory's office returned the appeal to the [ ] County prothonotory because the appeal was incomplete, as to the copies of proof of service.

(a) Shortly thereafter, the [ ] County prothonotory forwarded back to the Superior Court the still-incomplete appeal.

(b) On November 10, 1986, a notice of appeal was entered on behalf of [A].

(c) The appellee then filed a motion to quash appeal, which motion was granted on December 16, 1986.

## Charge III

(34) On or about July 22, 1985, [E] met with respondent to have him appeal a June 25, 1985 decision of the Unemployment Compensation Board of Review, wherein she was denied unemployment compensation in her claim against [J] Company.

(35) Between February 1986 and August 1986, [E] contacted repondent by telephone on approximately five or six occasions. On each occasion:

(a) Respondent informed [E] that he was still waiting to "hear from Harrisburg," thereby implying he *had* filed an appeal on [E's] behalf.

(b) In fact, at such times, respondent had not filed such an appeal with the Commonwealth Court, to which it should properly have been addressed.

(c) [E] told respondent that she also had not heard from the Office of Employment Security, or words to that effect, whereupon respondent assured her that "these things take time," or words to that effect.

(36) In or about the beginning of August 1986, [E] contacted the Office of Employment Security to determine on her own the status of her appeal, at which time she was informed that, in fact, nothing had been filed on her behalf.

(37) On or about August 4, 1986, [E] contacted respondent again.

(a) At that time, respondent told [E] that he was sure that he had filed an appeal, but he still had not received an update on the status of the appeal.

(b) Thereupon, [E] asked respondent to provide her with the docket number on her case; however, respondent was unable to provide her with such information.

(c) [E] then informed respondent that she had contacted the Harrisburg office of the Office of Employment Security, and was advised that nothing had been filed with that office on her behalf.

(d) Respondent stated that, "I'm pretty sure I did send it off, but if I didn't file it, I'd better check," or words to that effect.

(e) Respondent promised to contact [E] as soon as he was certain of the status of her case (time for appeal of which would have long since run out.)

(38) After hearing nothing from respondent, [E] by letter dated August 11, 1986, asked respondent for "more details about the situation," but respondent did not answer this letter.

## DISCUSSION OF THE ABOVE CHARGES

With respect to the above three charges, it is clear that there is prevailing pattern of conduct involving neglect on the part of the respondent with respect to matters entrusted to him. All three instances involve situations where the respondent has failed to even keep the clients minimally apprised or informed as to the status of their cases.

Reviewing the hearing committee decision, the board concurs with the finding that the evidence does not support a violation of D.R. 1-102(A)(4) or D.R. 1-102(A)(6) with respect to charge III.

The board concurs with the determination that respondent violated D.R. 6-101(a)(3) with regard to charge II and finds that the evidence amply supports his stipulation to violating the same rule with regard to charges I and III.

The board, however, does not concur with the

discipline recommended by the hearing committee. The board is of the opinion that public discipline is warranted in this stipulation so that respondent is made aware of the seriousness of his conduct that was exercised at the expense of the interests of his clients.

The board is distressed by the lack of information compiled by the hearing committee on the three charges considered and by the cursory adjudication relflected by its report.

The board is presented with the additional issue of whether or not the record of the respondent should be re-opened to consider two additional instances of misconduct.

Respondent alleges that the petitioner had knowledge of these two instances when the original petition was filed and that to allow the record to be re-opened now constitutes a deprivation of his constitutional right to be confronted with the charges before him.

The board, while cognizant of the problems of the respondent and the need to evaluate his fitness to practice law by an examination of the totality of the circumstances surrounding him, does not feel at this time that it should delay resolution of the pending charges in order to permit consolidation and consideration of the two additional charges against respondent.

While we are not of the opinion that respondent's due process rights would be violated by making a determination on these two additional charges, by consolidating them with the three charges already lodged, we believe the interests of justice are best served by denying the motion to consolidate and by imposing discipline upon respondent at this time.

The other charges pending against respondent may be considered in a seperate proceeding — hopefully, in a more thorough and careful manner by the hearing committee to which they are assigned.

It was the unanimous opinion of the board that respondent should be made aware as quickly as possible that his serious neglect of the matters entrusted to him is regarded as highly reprehensible by the board. If such conduct is continued, further and more severe discipline can be the only result.

## RECOMMENDATION

Based upon the foregoing discussion, the disciplinary board recommends that respondent, [ ], be given a public censure regarding the matters in the initial petition for discipline. It is recommended further that the record in this proceeding not be re-opened to consider the additional charges alleged in the subsequent petition for discipline. The board recommends finally that, pursuant to rule 208(g), Pa.R.D.E., the respondent be directed to pay the necessary expenses in the investigation and prosecution of this proceeding.

## ORDER

And now, July 15, 1988, upon consideration of the report and recommendations of the disciplinary board dated March 21, 1988, it is hereby ordered that [respondent] be and he is suspended from the bar of this commonwealth for a period of three months, and he shall comply with all provisions of rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the disciplinary board pursuant to rule 208(g), Pa.R.D.E.